IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GARY GRAVES, TERRY GALLAGHER,
and HENRY CROCKER,

      Plaintiffs,

vs.                                                                                          No. CIV 98-464 MV/DJS

TERRELL TUCKER and PATRICK JENNINGS,
individually and in their official capacities, and
THE CHAVES COUNTY SHERIFF'S
DEPARTMENT and THE COUNTY OF
CHAVES,

      Defendants.

# MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment, filed May 12, 1999 **[Doc. No. 49]**. The Court, having considered the motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion is well taken and will be **GRANTED IN PART** and **DENIED IN PART**, as explained below.

## BACKGROUND

Plaintiffs Gary Graves ("Graves"), Terry Gallagher ("Gallagher"), and Henry Crocker ("Crocker") here bring suit against their current or former employer, the Chaves County Sheriff's Department ("Sheriff's Department") and the County of Chaves ("County"), as well as the current and former Sheriffs, Terrell Tucker ("Tucker") and Patrick Jennings ("Jennings"). Plaintiffs allege that Defendants retaliated against them for filing a separate law suit in which they asserted violations of the Fair Labor Standards Act, alleging here the following four claims: (1) retaliation in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219; (2) retaliation in violation of 42 U.S.C. § 1983;

(3) conspiracy to deprive Plaintiffs' of their civil rights in violation of 42 U.S.C. § 1985; and (4) breach of covenant of good faith and fair dealing.[1]

### A. Undisputed Material Facts

For the purpose of resolving this motion, the Court finds that the following are the undisputed material facts:

1. Graves, Gallagher and Crocker are or were employed as law enforcement personnel with the Chaves County Sheriff's Department.

2. Tucker was the Sheriff of Chaves County and Jennings was the Deputy Sheriff until January 1998, when Jennings became the Sheriff.

3. Graves, Gallagher and Crocker, as well as 22 other Chaves County Sheriff's Department deputies, were also plaintiffs in another suit before Judge Parker of this Court, *Baca v. Chaves County*, CIV-97-207 JP/LFG, filed February 19, 1997. Tucker and Jennings were also named as defendants in that case, as was the Sheriff's Department and the County of Chaves. In *Baca*, the plaintiffs alleged that the County of Chaves violated the Fair Labor Standards Act by failing to provide overtime compensation for periods outside of their normal shifts when they were required to carry beepers and remain "on-call" for emergency assignments.

4. Judge Parker ruled in the *Baca* case that there was no employment contract between the plaintiffs and the defendants as a matter of law.

5. In addition, pursuant to a stipulation of the parties, Judge Parker entered an order dismissing the Sheriff's Department from the *Baca* case.

---

[1] In a previous Order, the Court dismissed several torts pled in the original Complaint.

6. A jury trial was held in the *Baca* case in October 1998. The jury found for the defendants and Judge Parker entered judgment in favor of the defendants on October 20, 1998.

7. Gallagher, Graves and Crocker all describe themselves as the "leaders" of the *Baca* case. Gallagher states that he initiated the lawsuit, assisted the attorneys and kept the other plaintiffs informed. Graves states that he also worked closely with counsel and Crocker states that he recruited other plaintiffs for the case and spoke with the press on at least one occasion.

8. After the filing of the *Baca* case, the following events occurred:

    a. Crocker and Gallagher were denied promotions to the position of corporal three and four times respectively. Other *Baca* plaintiffs were promoted over them. Promotions to the position of corporal were entirely within the discretion of the Sheriff.

    b. Graves was demoted from the position of corporal and suspended for several days. Both Tucker and Jennings were involved in this decision. Graves grieved his demotion and was successfully restored to that position.

    c. The day after Graves won his grievance, Jennings eliminated the position of corporal.

    d. Crocker was denied promotion to the position of lieutenant. Another *Baca* plaintiff was selected over him. The position of lieutenant was filled through a civil service testing process and review board which both Tucker and Jennings served on. However, the record does not specify how the final selection of lieutenant was made.[2]

---

[2] The record before the Court is inadequate in many respects. The parties have failed to delineate a clear time line, stating at most that these events occurred before or after the filing of the *Baca* case. Further, the Court has been provided with only the vaguest description of the promotional process in the Chaves County Sheriff's Department. Because, on a summary judgment motion, the Court must view the facts in the light most favorable to the non-movant, the Court has afforded Plaintiffs the benefits of these ambiguities.

e. Graves, Crocker and Gallagher were denied promotions to the position of sergeant. Two other *Baca* plaintiffs were selected. The position of sergeant was also filled through a civil service testing process and review board. The record states that the Sheriff was part of the review board but fails to specify if this was Sheriff Tucker or Sheriff Jennings or both. In addition, one *Baca* plaintiff was also on the review board. Again, the record does not specify how the final selection for the position was made.

f. Gallagher grieved the denial of promotion to sergeant. As a result, the testing and promotional process was redone, using a board of outside law enforcement personnel. At the conclusion of this process, Gallagher was promoted to sergeant on October 11, 1998, one week prior to trial in the *Baca* case.

g. Jennings ordered Graves to undergo a stress and psychological evaluation which was completed on June 8, 1997, and which Graves "passed." Tucker was also involved in the decision to order the psychological exam.

9. Plaintiffs assert that they have more seniority, experience, training and education than the other deputies selected for promotion over them.

10. Defendants provide the following "non-retaliatory" reasons for the actions described above:

a. Graves was demoted from corporal and suspended "because his response was unwarranted given the nature of a specific call." Specifically, Graves was dispatched to do a "walk through" at a truck stop based on reports that subjects were becoming "rowdy." Responding to this call, Graves exceeded the speed limit by 25 miles per hour. A junior deputy responding to the same

call apparently in the same mode was involved in an accident. Jennings attributed the junior deputy's accident to Graves' inappropriate response to the call.

      b.      Jennings eliminated the corporal position because it was not a "classified position," meaning that "[n]either the duties of the position or the position itself were defined by the Standard Operating Procedures of the Department or by the County Personnel Manual." Jennings further states that the position was eliminated because "[t]here was also a perception that persons were being unfairly promoted."

      c.      Jennings states that he requested that Graves undergo the psychological evaluation as a result of "unsolicited reports" he and Tucker had received over a two year period that Graves was contemplating harm to himself and others "up to and including murder and suicide." Graves acknowledges that he experienced significant stress during his divorce and may have discussed suicide, some five years prior.

11.      Plaintiffs complain of various other acts which they believe were retaliatory as follows:

      a.      Gallagher complains that his drug-sniffing dog was taken away from him. Defendants respond that the narcotics k-9 program was part of a joint task force with the City of Roswell and the State of New Mexico and that when these two entities withdrew from the task force, Chaves County could not afford to maintain the dog. Further, Defendants state this occurred prior to the filing of the *Baca* case.

      b.      Graves and Gallagher state that they were not given new cars even though in the past new cars were assigned based on seniority. Defendants respond that Graves and Gallagher have been in several accidents and their vehicles are maintained in poor condition.

c. Graves complains that he received letters of reprimand for not completing reports the same night, placing two items of evidence in one bag, missing a corporals' meeting, and being involved in a car accident. Graves asserts that other deputies were not reprimanded for similar conduct, though he provides no competent evidence to this effect.

d. Crocker complains that when he injured his ankle the Department did not request that other deputies donate sick leave to him even though it did so for other deputies. Defendants respond that Crocker never exhausted his sick leave and never requested such action on his behalf.

e. Crocker complains that he was not permitted to modify his work schedule to accommodate his school schedule even though a dispatcher was able to do this. Defendants respond that the dispatcher's schedule was changed for other reasons.

f. Crocker further complains that he was denied advanced training, not given light duty after his ankle operation and "harassed" when a lieutenant told him he might want to quit for health reasons.

**B. Additional Facts Which the Court Cannot Consider**

In addition to the forgoing, Plaintiffs provide the Court with the following information, which the Court will not consider for the reasons noted:

1. Graves states that he witnessed another deputy who was training a junior officer respond to a call at an excessive rate of speed, leading to an accident. Graves states that this other deputy was not disciplined in the same manner as he was. However, it is not apparent from the record that this information is within Graves' personal knowledge. *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

2. Graves further describes another deputy who was having problems during a divorce and violated a temporary restraining order. This deputy, according to Graves, was not required to undergo a psychological evaluation. Again, it is not apparent from the record that this information is within Graves' personal knowledge. *See Id.*

**STANDARD OF REVIEW**

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the non-moving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B&B Chemical Co.*, 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States*, 590 F.2d 884, 887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case.

*Celotex*, 477 U.S. at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322.

## ANALYSIS

Defendants move for summary judgment in their favor on the following grounds: (1) Plaintiffs cannot produce sufficient evidence to demonstrate retaliation under the Fair Labor Standards Act; (2) Plaintiffs' § 1983 claims duplicates the remedies available under the Fair Labor Standards Act and Plaintiffs cannot produce sufficient evidence to support the claims; (3) Plaintiffs' cannot produce sufficient evidence to demonstrate a conspiracy in violation of 42 U.S.C. § 1985; (4) Plaintiffs' claims for breach of covenant of good faith and fair dealing are barred on the grounds of *res judicata*; and (5) the Sheriff's Department is not a proper party. The Court will address these arguments in turn.

### 1. Retaliation Under the Fair Labor Standards Act

Plaintiffs assert that they were retaliated against for filing the *Baca* lawsuit, in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, and 42 U.S.C. § 1983. Defendants assert that there is insufficient evidence to demonstrate a connection between the protected activity and the allegedly retaliatory acts and that they have proffered legitimate non-retaliatory reasons for their actions, thereby defeating Plaintiffs' claims. The Court finds neither argument persuasive.

The Fair Labor Standards Act provides, in pertinent part, that it is unlawful,

> to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

§29 U.S.C. 215(a)(3). "In analyzing FLSA retaliation claims, we apply the shifting burden of proof scheme initially articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36

L.Ed.2d 668 (1973)." *Conner v. Schnuck Markets Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997) (*citing Richmond v. Oneok, Inc.*, 120 F.3d 205, 208 (10th Cir.1997) and *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir.1997)). As the Tenth Circuit has explained,

> [u]nder this standard, a plaintiff must first establish a prima facie case of retaliation. The burden then shifts to the employer to offer a legitimate reason for the plaintiff's termination [or lack of promotion]. Once the employer offers such a reason, the burden then shifts back to the plaintiff to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual.

*Conner*, 121 F.3d at 1394 (citations and quotations omitted). "To establish a prima facie case of FLSA retaliation, a plaintiff must show that: (1) he or she engaged in activity protected by the FLSA; (2) he or she suffered adverse action by the employer subsequent to or contemporaneous with such employee activity; and (3) a causal connection existed between the employee's activity and the employer's adverse action." *Id.* (citing *Archuleta v. Colorado Dep't of Insts.*, 936 F.2d 483, 486 (10th Cir.1991)).

Beginning with Plaintiffs' *prima facie* case, Defendants concede that all three Plaintiffs engaged in activity protected by the FLSA and that Graves and Crocker suffered adverse employment action in the form of non-promotions and disciplinary action after the initiation of the lawsuit. Defendants assert however that Gallagher has not demonstrated adverse employment action and that none of the Plaintiffs have established a causal connection between the adverse actions and the protected activity.

The undisputed facts demonstrate that Gallagher was denied promotions to the position of corporal four times and initially denied promotion to the position of sergeant after the filing of the *Baca* case. This is plainly "adverse action by the employer." It is true that Gallagher was ultimately promoted to sergeant after he successfully grieved the issue. While this might limit his amount of

9

damages or harm suffered, this does not negate the fact that he did in fact suffer adverse employment action following the initiation of the *Baca* case. Thus, all three Plaintiffs have satisfied elements one and two of the *prima facie* case. *Conner*, 121 F.3d at 1394.

As to the third element, the causal connection between the protected activity and the adverse employment action, the Tenth Circuit "has recognized that protected conduct closely followed by adverse action may justify an inference of retaliatory motive even though [the court has] rejected attempts to unduly stretch the close temporal proximity required under this standard." *Butler v. City of Prarie Village, Kansas*, 172 F.3d 736, 752 (10th Cir. 1999) (citations and quotation marks omitted); *Conner*, 121 F.3d at 1395; *Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982). Defendants argue that the adverse actions in this case came many months after the filing of the *Baca* suit, making them too remote in time to satisfy the temporal proximity requirement.

Contrary to Defendants' implicit assertion, Plaintiffs' protected conduct did not end with the *filing* of the *Baca* case. Rather, throughout the life of the case, Plaintiffs continued to take steps to support and press their FLSA claims against Defendants, up to and including testifying at trial. Thus, the Court finds that the *entire prosecution* of the *Baca* case constitutes the protected activity under the FLSA. The *Baca* case was not concluded until October of 1998. Although the time line before the Court is less then clear, "[g]ranting plaintiff[s] the benefit of every favorable inference," *Conner*, 121 F.3d at 1395, the record demonstrates that the adverse employment actions occurred throughout the pendency of the *Baca* case. Thus, the adverse actions were not only temporally proximate to the protected activity, but were concurrent with the protected activity. The Court finds this temporal concurrence to be very strong evidence of a causal connection between the protected activity and the adverse employment action. *See Conner*, 121 F.3d at 1395. Accordingly, the Court finds that Plaintiffs have established a *prima facie* case of retaliation.

Defendants next assert that they have successfully proffered legitimate non-discriminatory reasons for their actions. Although Defendants have offered some legitimate, non-discriminatory reasons for their actions, as noted in the summary of facts, no explanation has been proffered for the denials of promotions. Specifically, Defendants have failed to articulate any reason why Crocker and Gallagher were denied promotions to corporal three and four times, why Crocker was denied promotion to lieutenant, and why all three were initially denied promotions to sergeant.

Instead, Defendants point out that each time other *Baca* plaintiffs were selected over the Plaintiffs in this case. While this is circumstantial evidence tending to negate the inference of a discriminatory intent, it does not explain why *these* Plaintiffs were repeatedly not promoted. Defendants never explain why the deputies chosen were chosen over Crocker, Gallagher and Graves. Under the *McDonnell Douglas* burden shifting approach, it is their obligation to proffer some explanation for their conduct once Plaintiffs have established a *prima facie* case of discrimination. Having failed to meet this burden, summary judgment in Defendants favor on the retaliation claims is not appropriate. *Conner*, 121 F.3d at 1395.

Further, even if the Court were convinced that Defendants had successfully proffered legitimate, non-discriminatory reasons for the failures to promote, the Court finds that Plaintiffs have successfully produced evidence tending to demonstrate pretext. Defendants are correct that once a legitimate non-discriminatory reason has been proffered, Plaintiffs must produce some evidence tending to demonstrate pretext; the fact that they have established a *prima facie* case of retaliation is insufficient to survive a motion for summary judgment. *Conner*, 121 F.3d at 1397; *Durham v. Xerox Corp.*, 18 F.3d 836, 840 (10th Cir.). However, as the Tenth Circuit has stated, "[t]his is not to say that evidence introduced as part of the *prima facie* case cannot also be used at the pretext stage of the analysis." *Conner*, 121 F.3d at 1397 (*citing Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct.

at 1095 n. 10 ("[i]n saying that the presumption drops from the case [at the third stage], we do not imply that the trier of fact no longer may consider evidence previously introduced by the plaintiff to establish a *prima facie* case.") The Court finds that the repeated adverse employment actions taken here, contemporaneous to the protected activity, sufficiently supports the inference that Defendants' proffered reasons are pretextual, thus defeating Defendants' motion for summary judgment. *Id.*[3]

### 2. Plaintiffs' § 1983 Claims

Defendants next assert that Plaintiffs' § 1983 claims must be dismissed because these claims duplicate the remedies available under the FLSA and because Plaintiffs' cannot establish that their conduct related to a matter of public concern or the existence of a causal connection between the protected conduct and the adverse employment actions.

#### a. Duplication of § 1983 and FLSA Claims

In support of their first argument, Defendants assert that there must be "a separate independent basis" for Plaintiffs' § 1983 claims in order to prevent "double recovery" with Plaintiffs' FLSA claims, citing the cases of *Seemans v. Snow*, 84 F.3d 1226 (10th Cir. 1996), and *Drake v. City of Fort Collins*, 927 F.2d 1156 (10th Cir. 1991).

In both *Seemans* and *Drake*, the defendants argued that the plaintiffs' § 1983 claims were barred by the availability of more specific statutory remedies for discrimination under Title IX and Title VII, respectively. *Seemans*, 84 F.3d at 1233; *Drake*, 927 F.2d at 1162. In both cases, the Tenth Circuit disagreed. *Seemans*, 84 F.3d at 1234; *Drake*, 927 F.2d at 1162. The defendants in *Seemans* had relied on the Supreme Court case of *Middlesex County Sewerage Auth. v. National Sea*

---

[3]Because the repeated failures to promote are alone sufficient to establish a case of retaliation, thus precluding summary judgment in Defendants' favor, the Court sees no need to address the sufficiency of the evidence as to the other acts of retaliation alleged by Plaintiffs.

*Clammers Assoc.*, 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981), which states that "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." Adopting the reasoning of a related Sixth Circuit case, the Tenth Circuit stated,

> Title IX plaintiffs who bring a § 1983 action predicated on constitutional provisions do not circumvent Title IX procedures or gain access to remedies not available under Title IX. The *National Sea Clammers* doctrine "speaks only to whether federal statutory rights can be enforced both through the statute itself and through section 1983"; it does not "stand for the proposition that a federal statutory scheme can preempt independently existing constitutional rights, which have contours distinct from the statutory claim."

*Seemans*, 84 F.3d at 1233 (quoting *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 723 (6th Cir.1996)). The Tenth Circuit continued to state, "[o]f course, the 1983 action could not be predicated on a violation of Title IX itself. Such a duplicative effort would be barred." *Id*. (citing *Starrett v. Wadley*, 876 F.2d 808, 813-14 (10th Cir.1989)). Thus, while "a right created solely under Title VII cannot serve as the basis for an independent remedy under Section 1983. . . . if a plaintiff can show a constitutional violation by someone acting under color of state law, then the plaintiff has a cause of action under Section 1983, regardless of Title VII's concurrent application." *Id*. (*quoting Starrett*, 876 F.2d at 813-14). *Drake* similarly held that as long as a plaintiff has "an independent basis for claims outside of Title VII," the plaintiff's claims under § 1983 are not barred, even if based on the same predicate facts. *Drake*, 927 F.2d at 1162.

In the present case, Plaintiffs' assert that Defendants' alleged retaliation not only violated their rights under the FLSA but also violated their First Amendment rights to free speech. Thus, Plaintiffs do not assert that their federally protected rights were violated merely by the violation of the federal statute, but assert a second, independent basis for their § 1983 claims, rooted in the First Amendment.

Accordingly, Plaintiffs' may proceed with their claims under both the FLSA and § 1983, even though they are be based on the same predicate facts. *Seemans*, 84 F.3d at 1233; *Drake*, 927 F.2d at 1162.[4]

### b. Speech as Matter of Public Concern

"In order for a public employee to prevail on a claim that her dismissal [or failure to promote] violates protected speech rights, the court must first determine that her speech is protected by the First Amendment. The First Amendment protects a public employee's speech when it involves a matter of public concern." *Hom v. Squire*, 81 F.3d 969, 974 (10th Cir. 1996); *Horstkoetter v. Department of Public Safety*, 159 F.3d 1265, 1271 (10th Cir. 1998). "Matters of public concern are those which can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Hom*, 81 F.3d at 974 (*quoting Connick v. Myers*, 461 U.S. 138, 146 (1983)); *Horstkoetter*, 159 F.3d at 1271. "If the matter is of merely personal interest to the government employee, then the speech is not protected by the First Amendment." *Horstkoetter*, 159 F.3d at 1271. "To determine whether speech is of public concern, a court must examine the 'content, form and context of a given statement, as revealed by the whole record.'" *Paradis v. Montrose Memorial Hospital*, 157 F.3d 815, 818 (10th Cir. 1998) (*quoting Connick*, 461 U.S. at 147-48).

In the present case, Plaintiffs' conduct consisted of filing and pursuing a lawsuit against the Chaves County Sheriff's Department, alleging that the Department violated federal law by failing to provide Plaintiffs' overtime compensation. The Tenth Circuit has held that speech regarding a public agencies' violations of federal laws and questionable fiscal policies "are self-evidently matters of 'political, social, or other concern to the community.'" *Paradis*, 157 F.3d at 818 (*citing Schalk v.*

---

[4]The Court notes that this does not translate into a right to "double recovery" for Plaintiffs. Plaintiffs may recover damages for the harms they have suffered. If the violation of their statutory and constitutional rights resulted in the same harm, e.g., lack of promotions, then they may recover only once for that harm regardless of the number of claims they plead and prove.

*Gallemore*, 906 F.2d 491, 495-96 (10th Cir.1990)). In addition, the "First Amendment protects the right to testify truthfully at trial." *Melton v. City of Okla. City*, 879 F.2d 706, 714 (10th Cir.1989). Moreover, the FLSA anti-retaliation provision, quoted above, evidences that Congress also considers the speech at issue here sufficiently important to provide it additional statutory protection, reaching retaliatory conduct by private as well as public employers. Thus, the court finds that Plaintiffs' conduct constitutes speech relating to a matter of public concern, bringing it within the protection of the First Amendment. *Paradis*, 157 F.3d at 818.

    **c.**    **Causal Connection**

A causal connection between the plaintiff's protected activity and the termination is an element of the plaintiff's *prima facie* case in a claim of retaliation under both the FLSA and § 1983. *Jeffries v. Kansas*, 147 F.3d 1220, 1231 (10th Cir. 1998); *Hom*, 81 F.3d at 974.

Defendants contend first that Plaintiffs' have failed to establish a causal causation between their protected activity and the adverse employment action because the promotional and disciplinary boards which made the decisions at issues contained several individuals, not just the Defendant Sheriffs, including some *Baca* Plaintiffs. In support of the assertion that this "breaks the connection" between the adverse action and the protected activity, Defendants cite the Second Circuit case of *Jeffries v. Harlston*, 52 F.3d 9, 14 (2nd Cir. 1995). In *Jeffries*, a jury had returned a special verdict finding that a majority of a disciplinary board was motivated by proper considerations in firing an employee for his speech, although six members of the board were motivated by improper retaliatory reasons. *Id*. The Second Circuit expressed the view that this verdict was "hopelessly irreconcilable," but nevertheless upheld the termination because the jury had concluded that a majority of the board acted with proper motivations. *Id*.

15

In the present case, the Court must first observe that not all of the allegedly retaliatory acts were taken by a multi-member board. In particular, the decision of promotion to corporal lay solely in the hands of the Sheriff. Further, the Court must also note that the decision of two of these multi-member boards were later reversed (specifically, the decision to demote Graves from corporal and the refusal to promote Gallagher). Moreover, even for those decisions that were taken by multi-member boards, the factual record fails to demonstrate that a majority of the disciplinary and hiring boards were motivated by proper concerns rather than improper retaliatory ones. The record is simply silent as to the motivations of any of the board members. The fact that not all of them are named defendants and that at least one was also a plaintiff in the *Baca* case is simply insufficient to demonstrate that a majority of the board was motivated by non-retaliatory reasons, particularly given the complete failure of Defendants to proffer non-discriminatory reasons for the promotional decisions and the close proximity between the protected conduct and the adverse employment actions. Thus, the court finds that the record does not support Defendants' argument that the multi-member boards "break the connection" between the protected conduct and the adverse employment action.

Finally, Defendants argue that Plaintiffs have failed to establish a causal connection for the same reasons discussed above in relation to Plaintiffs' FLSA claims. The Court rejects this argument for the reasons noted above.

### 3. Conspiracy in Violation of § 1985

Defendants next argue that Plaintiffs cannot produce sufficient evidence to demonstrate that Tucker and Jennings conspired to deprive Plaintiffs of their civil rights, in violation of 42 U.S.C. § 1985, and invoke the "intracorporate conspiracy doctrine," claiming that conspiracy is not possible

in this case because Tucker and Jennings are employees of the same governmental agency. *See Breyer v. Rockwell Intern. Corp.*, 40 F.3d 1119, 1127 (10th Cir. 1994).

> Title 42 U.S.C. § 1985, makes it a violation of federal law,
>
> [i]f two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, . . . .

42 U.S.C. § 1985(2). "The elements of a deterrence claim under section 1985(2) are (1) a conspiracy, (2) to deter testimony by force or intimidation, and (3) injury to the plaintiff. *Breyer*, 40 F.3d at 1126 (*citing Rutledge v. Arizona Bd. of Regents*, 859 F.2d 732, 735 (9th Cir.1988)). "The first element, a conspiracy, 'requires the combination of two or more persons acting in concert.'" *Id.* (*quoting Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir.1990)). "A plaintiff must allege, 'either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants.'" *Id.* (*quoting Abercrombie*, 896 F.2d at 1231). Further, "'the conspiracy must be one that has the requisite statutory purpose,' namely to deter a party or witness from attending or testifying freely, fully, and truthfully." *Id.* (*quoting Brown v. Chaffee*, 612 F.2d 497, 502 (10th Cir.1979)).

Defendants argument regarding the "intracorporate conspiracy doctrine" may be disposed of quickly. The intracorporate conspiracy doctrine provides that "a corporation cannot conspire with its corporate agents." *Breyer*, 40 F.3d at 1127. However, the Tenth Circuit has held that this doctrine does not apply in the context of civil rights claims. *Id.* ("the doctrine, designed to allow one corporation to take actions that two corporations could not agree to do, should not be construed to permit the same corporation and its employees to engage in civil rights violations."). Thus,

17

Defendants' argument that they could not have conspired to deprive Plaintiffs of their civil rights because they are both agents of the same governmental entity has no merit.

Defendants second argument, that there is insufficient evidence of an agreement between Tucker and Jennings, is more difficult. There is no direct evidence of an agreement between the two. Plaintiffs have presented only the following circumstantial evidence of a conspiracy: (1) both Tucker and Jennings were involved in the decision to demote Graves from corporal; (2) Tucker and Jennings both served on the review board for the lieutenant position; and (3) Tucker and Jennings were both involved in the decision to order Graves to undergo a psychiatric evaluation.[5] The Court finds this to be less than overwhelming evidence of a conspiracy between Tucker and Jennings.

Nevertheless, the question of whether Defendants agreed to act in concert to intimidate Plaintiffs' from pursuing their claim is not one well suited to resolution on summary judgment. Plaintiffs have produced some circumstantial evidence that Tucker and Jennings acted in concert, which might support the inference of such an agreement. Moreover, there is clear evidence that Plaintiffs did in fact suffer adverse employment actions at both Tucker and Jennings hands while their suit was pending. This is sufficient to satisfy Plaintiffs' burden in responding to Defendants' motion for summary judgment and to warrant sending the issue to the jury for resolution. Thus, the Court finds that Defendants are not entitled to judgment as a matter of law on Plaintiffs' § 1985 claim.

### 4. **Breach of Contract**

Defendants assert that Plaintiffs' claim for breach of covenant of good faith and fair dealing must be dismissed on the grounds of *res judicata* as Judge Parker ruled in *Baca* that no employment

---

[5]Defendants correctly note that the only source for these facts is the deposition testimony of Plaintiffs themselves. However, the facts appear to be within the personal knowledge of Plaintiffs and Defendants have failed present any evidence to the contrary. Therefore, the Court will consider this evidence.

contract exists between the parties as a matter of law. Plaintiffs do not object. Accordingly, the Court will dismiss the claim for breach of covenant of good faith and fair dealing, labeled in the Complaint as Count VII.

### 5. The Sheriff's Department as a Party

Finally, Defendants argue that the Chaves County Sheriff's Department is not a proper party to this case as it is merely an extension of Chaves County and cannot be held independently liable.

Indeed, in the case of *Martinez v. Winner*, 771 F.2d 424, 444 (10th Cir. 1985), modified in part, 778 F.2d 553, remanded on other grounds, 475 U.S. 1138, vacated on other grounds, 800 F.2d 230, the Tenth Circuit held that a complaint sufficiently stated a case of action under § 1983 to allow the plaintiff to proceed against the City and County of Denver, but stated, "[t]he 'City of Denver Police Department' is not a separate suable entity, and the complaint will be dismissed as to it." *See also Post v. City of Fort Lauderdale*, 750 F.Supp. 1131, 1133 (S.D.Fla. 1990); *Bourne v City of Colorado Springs*, 624 F.Supp. 474, 479 (D.Colo. 1985). Plaintiffs cite a New Mexico state case for the proposition that a police department is a proper party to a tort suit. *Weinstein v. City of Santa Fe ex rel Santa Fe Police Dep't, An Agency of the City of Santa Fe*, 121 N.M. 646, 916 P.2d 1313, 1318 (N.M. 1996). However, *Weinstein* merely held that the City of Santa Fe, via its agency, the police department, could be held liable under the New Mexico Tort Claims Act, for the acts of its employees, despite the fact that the Act waives immunity specifically only for law enforcement personnel, not for their employers. *Id*. The case continues to discuss what showing would be necessary to find *the city* liable as the employer of the officers. *Id*. Nothing in the opinion stands for the proposition that the police department may properly be named and sued as an entity separate and apart from the city.

Pursuant to *Martinez, supra*, 771 F.2d at 444, the Court finds that the Chaves County Sheriff's Department is not a "not a separate suable entity" distinct from Chaves County and is not a proper party to this case. Therefore, the Complaint will be dismissed as to it. *Id*.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment **[Doc. No. 49]** is hereby **GRANTED IN PART** and **DENIED IN PART**. Count VII of the Complaint, asserting breach of covenant of good faith and fair dealing, is hereby **DISMISSED WITH PREJUDICE** and Defendant Chaves County Sheriff's Department is hereby **DISMISSED** from the Complaint in its entirety. Remaining properly before the Court are Plaintiffs claims of retaliation under the FLSA, retaliation in violation of 42 U.S.C. § 1983, and conspiracy to deprive Plaintiffs' of their civil rights in violation of 42 U.S.C. § 1985, as to Defendants Tucker, Jennings and the County of Chaves.

MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

Attorney for Plaintiff:

Robert Beauvais

Attorneys for Defendants:

Elizabeth German
Daniel Ulibarri